UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:07CR541 CDP |
| | ) | |
| DARWIN MARKEITH HUGGANS, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER, FINDINGS AND CONCLUSIONS

After defendant waived jury trial, the Court held a bench trial, which began on January 20, 2009. The evidence was concluded after five days of evidence and almost thirty witnesses. After a delay requested by both counsel, I set the conclusion of the trial for March 4, 2009, for the purpose of stating my decision on the charges in open court. The day before, however, defendant filed a new motion to dismiss, and so, after a hearing, I ordered supplemental briefing, set a new hearing date for March 13, 2009, and withheld the conclusion of the bench trial. On March 13 I denied the motion, for the reasons stated on the record and for the reasons that follow. I also announced my finding of guilt on the charges in the superseding indictment, for the reasons stated on the record in open court and as set forth in more detail here.

## Motion to Dismiss

Defendant's late-filed motion argues that the government had withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Kyles v. Whitley*, 514 U.S. 419 (1995). At the March 13, 2009, hearing, defendant withdrew all affidavits and other evidentiary support referred to in his initial motion[1] so the case was before me only on the legal arguments. Defendant's position is that the government is obligated to disclose, as exculpatory evidence covered by *Brady*, whether persons believed to be involved in the drug business were questioned about Huggans and denied that he was involved in the cocaine trade in St. Louis. Defendant argues that if law enforcement officers or prosecutors interviewed people who said they did *not* have any information about this defendant, that would be exculpatory because it would impeach the government's witnesses at trial who said defendant *was* involved in the drug trade. Defendant says that the cumulative effect of such denials would be exculpatory.

In *Kyles* the Supreme Court held that a court should consider the cumulative

---

[1]These exhibits were handed to the Court at the March 4 hearing but were never filed. Two were unsigned affidavits and two were photocopies of affidavits. Defense counsel explained on March 13 that counsel did not have signed originals as they themselves had not been involved in procuring the documents, and so they withdrew them and asked the Court to ignore the arguments about the "affidavits" in the initial brief.

effect of wrongfully withheld exculpatory evidence in order to determine whether it was material and therefore a *Brady* violation. 514 U.S. at 436. Defendant here makes a slightly different argument: he says that if neutral evidence (unrelated drug dealers' statements that they had not dealt with Huggans) is considered collectively (there might be a lot of them), then the evidence is transformed from neutral evidence to exculpatory evidence. He also argues that anyone who is known to have spoken to the government about the defendant must be presumed to have provided exculpatory evidence unless the government calls that person as a witness. This is simply not the law, and it ignores the reality of criminal investigations and prosecutions.

In this case there is no reason to believe that the government withheld exculpatory evidence. The government was not required to call as witnesses all people that the police might have talked to about defendant, and the court will not presume that its failure to call everyone who might have given an interview means that those people had exculpatory evidence. I also will not presume that neutral evidence – such as other drug dealers in St. Louis not knowing Huggans – somehow must be disclosed under *Brady*. It is not exculpatory, and the cumulative effect of that kind of neutral evidence is still neutral, not exculpatory. Moreover, defendant withdrew the affidavits he had initially presented, and has

provided no evidence whatsoever to show that the government questioned anyone who provided even arguably exculpatory evidence. The motion is denied.

## Findings and Conclusions

On the charges in the superseding indictment, the Court makes the following findings and conclusions, as required upon request under Rule 23(c), Fed. R. Crim. P.:

## COUNT I

In Count I defendant Darwin Markeith Huggans is charged with conspiracy to distribute and possess with the intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §846 and 841(a)(1) and punishable under 21 U.S.C. § 841(b)(1)(A)(ii)(II).

The elements of this crime are that:

Two or more people reached an agreement or came to an understanding to distribute and possess with the intent to distribute cocaine;

Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect;

At the time defendant joined the agreement or understanding, he knew its illegal purpose; and

The amount of cocaine involved in the conspiracy and reasonably foreseeable to the defendant exceeded five kilograms.

The superseding indictment alleges a conspiracy beginning in 2000 and continuing up to the date of the indictment, which was December 20, 2007.

The government has proven each of the elements of the charged offense beyond a reasonable doubt. The evidence establishes that at least as early as 2002, a conspiracy existed between Luis Sais and others to distribute cocaine and other narcotics from Mexico in the United States. Luis Sais ran his organization from jail in Mexico. Members of the conspiracy would pick up cocaine from Dallas and other Texas cities and drive it in vehicles with hidden compartments to various other locations, including St. Louis. Defendant Huggans joined this conspiracy at least as early as the summer of 2006. Huggans was responsible for distribution of at least four hundred kilograms of cocaine during the time he was part of the Sais conspiracy, and probably more. All these things the government proved beyond a reasonable doubt.

During and before trial, defendant argued that the government had failed to specify sufficiently the conspiracy it intended to prove. This argument sounds vaguely like a claim that the government proved a conspiracy different from that alleged, although defendant has certainly not articulated an objection that there are

multiple conspiracies while the indictment alleged one. To the extent defendant is attempting to argue that his rights were violated in this respect, the argument fails. The government proved beyond a reasonable doubt the conspiracy charged in the indictment, that Huggans joined the conspiracy involving Luis Sais, Anthony Stiles, and others during 2006, and that he was an active participant in it. The government also presented evidence, admissible under Rule 404(b), Fed. R. Evid., that Stiles and Huggans were involved in drug distribution activities before that time, where their source of supply was someone other than Sais.

"A single conspiracy is composed of individuals sharing common purposes or objectives under one general agreement." *United States v. Smith*, 450 F.3d 856, 860 (8th Cir. 2006). The participants can change over time and not all conspirators need be aware of the activities of the others. *Id.* In some cases a defendant may be prejudiced by the government's alleging one conspiracy and proving multiple conspiracies. *See United States v. Garth,* 540 F.3d 766, 777 (8th Cir. 2008); *United States v. Barth*, 424 F.3d 752, 759 (8th Cir. 2005). To show a violation of his rights, however, the defendant must show both that there has been a variance and that he has been prejudiced by it. *Id.* I do not believe that there was any variance between the indictment and proof in this case. The government always has the option of electing "to proceed on a subset of the allegations in the

indictment, proving a conspiracy smaller than the one alleged." *United States v. Buckley*, 525 F.3d 629, 634 n. 2 (8th Cir. 2008) (quoting and agreeing with *United States v. Duff*, 76 F.3d 122, 126 (7th Cir. 1996)). To the extent the dates in the indictment were broader than the dates proven, that is not a variance.

Even if there had been a variance, however, it caused no prejudice to Huggans. I am basing my determination of his guilt on the substantial evidence showing that he participated, along with Anthony Stiles, in the Sais conspiracy, and not on evidence of any other conspiracy. Cases generally recognize that prejudice may result where the indictment provides insufficient notice of what the evidence expected at trial will be, or where the indictment is so vague that a defendant risks subsequent prosecution for the same conduct, or where the defendant is prejudiced by a "spillover" of evidence from one conspiracy to another. *Garth*, 540 F3d at 777. Defendant argued before trial that he was not given sufficient notice of the government's case, but this argument is belied by defendant's own motions and arguments, which reflect that he had been advised that the government intended to present evidence of defendant's drug dealing with Anthony Stiles, which is what the government presented. Huggans had sufficient notice of the charges, the indictment is not so vague as to raise double jeopardy problems, and he has not been prejudiced by any spillover of evidence from one

conspiracy to another. *See United States v. Cain*, 487 F.3d 1108, 1113-14 (8th Cir. 2007). As in the recent Eighth Circuit cases cited above, the government proved beyond a reasonable doubt that defendant was involved in all the criminal activity proven. The Sais conspiracy began before Huggans joined it, but join it he did.

Based on all the evidence, I find the defendant GUILTY as charged in Count I of the Superseding Indictment of violating 21 U.S.C. § 846, and I find that he is subject to punishment under 21 U.S.C. § 841(b)(1)(A)(ii)(II).

## **COUNT II**

Count II of the superseding indictment charges Huggans with attempting to possess with the intent to distribute more than five kilograms of cocaine, beginning in March 2007 and continuing until April 12, 2007, in violation of 21 U.S.C. § 841(a)(1) and 846, and punishable under 21 U.S.C. § 841(b)(1)(A)(ii).

The elements of this crime are:

The defendant intended to possess with intent to distribute more than five kilograms of cocaine;

The defendant knew the material he intended to possess with intent to distribute was cocaine; and

The defendant voluntarily and intentionally carried out some act which was

a substantial step toward possession with intent to distribute more than five kilograms of cocaine.

The government has proven each of the elements of the charged offense beyond a reasonable doubt. Defendant made arrangements with a cooperating individual to purchase twenty kilograms of cocaine for $340,000, or $17,000 per kilogram. He met the cooperating individual at an agreed location and they drove to a hotel to count the money. The cooperating individual wore an audio recording device, and the meeting in the hotel room was video recorded. Once in the hotel room, the other man began counting the money. After it had been partially counted, Huggans urged the other man to hurry up, and downplayed the need to count it all. In fact he had only brought $329,320 to the meeting, and so was short almost $11,000. Eventually they put the money Huggans had brought into a duffel bag the cooperating witness had brought, and began to leave the room, with the cooperating witness now carrying the bag with the money. Huggans was then arrested.

Huggans argues that he cannot be found guilty of attempt because during the meeting he said that he wanted to see the cocaine before he would pay the money. The cooperating witness said he would call the driver to bring the cocaine, and in fact made a telephone call – supposedly to the driver, although it

was actually to the arrest team. The evidence is more than sufficient to show, beyond a reasonable doubt, that Huggans is guilty of attempt. He took several substantial steps toward possession with intent to distribute 20 kilograms of cocaine, most obviously, bringing over three hundred thousand dollars to the person he believed would sell him cocaine.

Huggans' reliance on *United States v. Joyce*, 693 F.2d 838 (8th Cir. 1982) is misplaced. In *Joyce* the defendant took back his money and called off the deal when the he and the seller could not agree who would go first: the defendant kept saying he would not show the money until the seller showed the drugs, and the seller (undercover officer) kept saying he would not show the drugs until he saw the money. That is a far cry from what happened here: Huggans merely said that he wanted to see the drugs before he would agree that the cooperating individual could keep the money, but he actually transferred possession of the money to the supposed seller of the drugs. When they left the hotel room together, the seller was carrying the money. The evidence showed beyond a reasonable doubt that Huggans was intending, and attempting, to complete the purchase at the time of his arrest. He did not in any way back out of the deal or try to stop it – he took several very substantial steps, and the government proved the crime of attempt beyond a reasonable doubt.

Based on all the evidence, I find the defendant GUILTY as charged in Count II of the Superseding Indictment of violating 21 U.S.C. § 841(a)(1) and 846, and I find that he is subject to the punishment set out in 21 U.S.C. § 841(b)(1)(A)(ii).

## COUNT III

Count III is a forfeiture count brought under 21 U.S.C. § 853, and alleges that numerous items of property constituted or were derived from proceeds of the illegal conduct alleged in Counts I and II, and were used or intended to be used to commit or facilitate commission of those crimes. The government seeks to forfeit six million dollars in currency or property. It lists thirteen specific items of property. I conclude that the government has proven beyond a reasonable doubt that it is entitled to forfeiture of $6,000,000, and that most of the specific property alleged in the indictment represents proceeds of the illegal conduct proven in Counts I and II or was used to facilitate that conduct. Certain items were purchased before Huggans joined the Sais conspiracy, and so the government concedes that they are not subject to forfeiture.

To prove entitlement to criminal forfeiture, the government must prove that the property was obtained, directly or indirectly, as a result of the offenses of conviction, or that it was used or intended to be used to facilitate that crime. 21

U.S.C. § 853(a). The statute creates a rebuttable presumption that property of a defendant convicted of a drug trafficking crime is subject to forfeiture if the government shows, by a preponderance of the evidence, that the property was acquired by the defendant during the period of the violation of the law or within a reasonable time after that, or that there was no likely source for such property other than the violation of the law proven in the earlier counts. 21 U.S.C. § 853(d).

Anthony Stiles testified that he sold Huggans 600 to 700 kilograms of cocaine during the time Stiles was distributing cocaine for Sais. Huggans was his largest customer. Even discounting Stiles' testimony to assume that Huggans was responsible for only 400 kilograms, and assuming the price Huggans received was only $17,000 per kilogram (which is again, discounting the evidence), Huggans' illegal proceeds from this conspiracy amounted to $6.8 million, which exceeds the amount the government seeks in forfeiture. The government has shown that it is entitled to forfeiture of this amount, and it will be entitled to a judgment of $6 million at sentencing. It has also shown that it is entitled to forfeiture of the specific items of property listed in the indictment, with two exceptions.

Item (1) listed in Count III is the currency in the amount of $329,320 that Huggans brought to the hotel on April 12, 2007, to purchase 20 kilograms of

cocaine. This money was used to facilitate the crime proven in count II, and there is no doubt that it is appropriately forfeited.

Item (2) is $13,569 in currency found on defendant's person and in his house when he was arrested after the original indictment in this case was returned in October of 2007. This money was proceeds of Huggans' illegal activity, and will be forfeited.

Items (3), (5), (8), and (9) are vehicles (a 2006 Ironhorse Trailer, A 2005 Suzuki Hayabusa motorcycle, a 2006 Lincoln Navigator, and a 2006 Nissan Altima) that Huggans purchased during the time of the conspiracy proven in Count I or shortly thereafter, and all are subject to forfeiture. Two of the vehicles – the Lincoln Navigator and the Nissan Altima – were also used to facilitate the crimes.

Items (6) and (7) (a 2001 Chevrolet Camaro SS and a 2000 Suzuki Hayabusa motorcycle) are vehicles that Huggans acquired before he joined this conspiracy, and so they are not subject to forfeiture.

Item (4) is a Ford F-150 truck that Huggans was driving when he met the cooperating individual to discuss setting up the 20 kilogram sale in April of 2007. This truck was directly used to facilitate the crime of attempt proven in Count II, and it should therefore be forfeited.

Item (10) is real property – a house with the address of 4387 Westhampton

Place Court, St. Charles, MO – which Huggans purchased in the summer of 2006 for approximately $367,000. Huggans borrowed $220,000 to buy this home, but he paid an additional amount of almost $140,000. He deposited $35,000 when he signed the contract, and paid the rest at closing. The source of these funds was his drug dealing, and the conspiracy proven in Count I. This house was also used to facilitate the crimes, as cash and a money counter were found there at the time of Huggans' October 2007 arrest.

Items (11), (12) and (13) are bank accounts and investments that were obtained during the course of the conspiracy, and they are subject to forfeiture under the statutory presumption.

Defendant argues that he was a legitimate real estate investor and that he bought, rehabbed, and sold houses for a profit, and that this is the source of his wealth. The evidence showed that he did rehab and sell at least one house, but the financial records do not show that he made any substantial amounts of money from this business. He has failed to show any substantial amounts of legitimate income, and certainly not enough to justify the many purchases he made. Additionally, Huggans misrepresented his earnings and employment to numerous people with whom he conducted "legitimate" business, frequently falsely stating that he was employed as a manager in a relative's janitorial business, when in fact

he had never worked there.  His lying about his legitimate income tends to show that he did not have legitimate income.  Although he may have "dabbled" in real estate and rehabbing, that business certainly did not provide sufficient income to account for his substantial cash flow.  His counsel attempted to argue that he was a successful gambler, but there is absolutely no evidence to suggest that gambling earnings provided the means for purchasing the items the government seeks to forfeit.

Finally, the government proved that within a month of the April 12, 2007 sting operation (Huggans was arrested and then released pending prosecution), Huggans gave away numerous automobiles and over $100,000 in cash to family members or friends.  He also quit-claimed his ownership interest in several pieces of real property to others.  These numerous transfers for little or no value immediately following his arrest after the failed attempt to buy 20 kilograms of cocaine show a person trying to protect his ill-gotten assets from forfeiture.

Although it is a matter that I can reconsider at sentencing, if requested to do so, I have considered whether requiring the forfeitures sought here would constitute an excessive fine so as to violate the constitution.  I conclude that it would not, given the magnitude of defendant's drug trafficking operation. Defendant Huggans was a very large distributor of drugs, responsible for ten to

twenty kilograms of cocaine coming into the St Louis market multiple times a month. A conservative estimate from the evidence makes him personally responsible for over 400 kilograms of cocaine, and so the forfeitures here are not excessive.

I find that the property listed in Count III of the Superseding Indictment, with the exception of items (6) and (7), is subject to forfeiture under 21 U.S.C. § 853.

## **Sentencing Issues**

Before trial the government filed a Criminal Information under 21 U.S.C. § 851(a)(1), charging defendant with two prior felony drug convictions. This would result in defendant's sentencing range going from a ten-year mandatory minimum with maximum of life to a sentence of mandatory life imprisonment under 21 U.S.C. § 841(b)(1)(A). Under § 851(b) the court shall inquire of defendant whether he affirms or denies that he has been previously convicted as alleged. I made that inquiry of defense counsel at the hearing today, and counsel indicated he wished to consult with his client before I asked defendant the question directly. Under § 841(c), if the defendant denies the allegation or claims that any conviction is invalid, he must file a written response. If defendant claims that any conviction is invalid, he must set forth "with particularity in his response" his

claim and any factual basis for the claim.  This order sets the deadline for filing such a response as the same date that objections to the presentence report must be filed.  If defendant fails to file a response by that date, he will have waived his right to challenge any prior conviction.

As I have found defendant guilty as charged and pronounced the finding of guilt in open court in defendant's presence, I will set the matter for sentencing.  Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion and amended motion to dismiss [#109, 114] are denied.

**IT IS FURTHER ORDERED** that sentencing in this case is set for **<u>Wednesday, June 3, 2009 at 1:00 p.m.</u>**  Any objections to the presentence report must be filed on or before **May 13, 2009.**

**IT IS FURTHER ORDERED** that defendant must file any written response to the criminal information regarding his prior offenses [#89] no later than **<u>May 13, 2009</u>**.  If a written response is filed, the Court will hear the matter on **<u>Wednesday, June 3, 2009 at 1:00 p.m.</u>**, at the beginning of the sentencing hearing.

**IT IS FURTHER ORDERED** that if either party expects to introduce testimony at the sentencing hearing, they must notify the Court no later than

**May 20, 2009**.  Any sentencing memorandum must be filed no later than **May 27, 2009**.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　CATHERINE D. PERRY
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Dated this 13th day of March, 2009.