*A*

# AFFIDAVIT

**THAT I, ALAN STEUART**, affiant herein, and upon his solemn oath and under penalty of perjury pursuant to Title 28 U.S.C. § 1746, state, declare, and certify the following:

1. That on January 25, 2009, at on or between the hours of 4:00 pm and 6:00 pm, Nick A. Zotos, Attorney at Law, Michael Grady, Legal Consultant and Paralegal, and I visited with Darwin Markeith Huggans at the St. Louis County Justice Center.

2. I am a private investigator.

3. During the course of our visit with Mr. Huggans, I witnessed Mr. Grady advise Mr. Huggans that he was faced with a penalty of 30 years to life under Title 21 U.S.C § 841(b)(1)(A)(ii) and §851 (a).

4. I also witnessed Mr. Huggans tell Mr. Grady that he was wrong and that he was advised by legal counsel that he only faced a mandatory penalty of 10 years, if convicted.

5. I additionally observed Mr. Zotos state that he was under the impression or assumption that Frank Fabbri advised Mr. Huggans of the sentencing enhancement provisions of Title 21 U.S.C. § 851(a).

6. Mr. Huggans responded by stating that neither attorney advised him of the enhancement and that he was facing a mandatory life sentence if convicted.

Respectfully submitted,

**ALAN STEUART**
PRIVATE INVESTIGATOR
P.O. BOX 2982
HOUSTON, TEXAS 77252

**State of Texas**          )

                            )      ss.

**County of Harris**        )

Subscribed and sworn to before me on this _15_ day of May, 2009.

_____
Notary Public

My Commission Expires:

A. H. SLEDGE
Notary Public, State of Texas
My Commission Expires
June 10, 2009

2

# AFFIDAVIT

**THAT I, MICHAEL GRADY**, affiant herein, and upon his solemn oath and under penalty of perjury pursuant to Title 28 U.S.C. § 1746, state, declare, and certify the following:

1.  That on January 25, 2009, at on or between the hours of 4:00 pm and 6:00 pm, Nick A. Zotos, Attorney at Law, Alan Steuart, Private Investigator, and I visited with Darwin Markeith Huggans at the St. Louis County Justice Center.

2.  I am a paralegal.

3.  During the course of our visit with Mr. Huggans, I advised Mr. Huggans that he was facing a penalty of 30 years to life under Title 21 U.S.C § 841(b)(1)(A)(ii) and §851 (a).

4.  Mr. Huggans responded by stating, I was wrong.  He went on to state that he was advised by legal counsel that he only faced a mandatory penalty of 10 years, if convicted.

5.  I observed Mr. Zotos state that he was under the impression or assumption that Frank Fabbri advised Mr. Huggans of the sentencing enhancement provisions of Title 21 U.S.C. § 851(a).

6.  Mr. Huggans responded by stating that neither attorney advised him of the enhancement and that he was facing a mandatory life sentence if convicted.

Respectfully submitted,

MICHAEL GRADY

**State of Missouri** )

) ss.

**County of St. Louis** )

Subscribed and sworn to before me on this 9th day of May, 2009.

Notary Public

My Commission Expires:

DEBORAH R. NORMAN
Notary Public-Notary Seal
State of Missouri, Saint Louis City
Commission # 09476942
My Commission Expires Mar 18, 2013

2

STATE OF ILLINOIS            )

                             )  SS.

COUNTY OF BOND               )


## AFFIDAVIT


THAT I, ERIC EARNEST, upon my solemn oath and under the penalty of perjury pursuant to Title 28 U.S.C. § 1746, state and certify the following:


1.  That my name is Eric Earnest, and I am currently in-carcerated at the United States Federal Correctional Center at Greenville, Illinois.

2.  That I am incarcerated pursuant to my plea of guilty to federal drug offenses arising from my involvement in a drug trafficking conspiracy.  The conspiracy has been described as the "Stiles' conspiracy" and as the "Sais conspiracy."  My plea acknowledged my participation in the conspiracy during 2005 and 2006 until the end of the conspiracy in 2006.

3.  That my residence during 2005 and 2006 was in St. Louis, Missouri.  I have pled guilty to involvement in drug transactions through the conspiracy in the St. Louis metro-

politan area throughout that time.

4.   That I knew "Darwin Markeith Huggans" prior to and during the time that I was involved in the Stiles/Sais conspiracy.  That I also knew the individuals with whom I conducted drug transactions as a part of the conspiracy, and that none of my transactions ever involved Mr. Huggans.  In fact, I never saw Mr. Huggans take part in the purchase or sale of any controlled substance with any co-conspirator.  I never heard Mr. Huggans claim or admit to participation in any such transaction or in the conspiracy.

5.   That prior to learning of Mr Stiles' statements implicating Mr. Huggans in the conspiracy, I never heard Mr. Stiles or anyone else whom I knew or believed to be involved in the conspiracy that Mr. Huggans was a co-conspirator.  In particular, prior to learning of Mr. Stiles' recent statements to law enforcement agents and in court proceedings, I never heard Mr. Stiles say that Mr. Huggans was involved in drug transactions with him or was a member of the conspiracy.

6.  That I believe that I would have known if Mr. Huggans was a participant during 2005 or 2006 in the Stiles/Sais drug trafficking conspiracy.  I had no such knowledge.

7.   That if I had been called to testify by either the government or the defense at Mr. Huggans' trial, I would have

-2-

testified and my testimony regarding the matters addressed in this affidavit would have been consistent with the statements in the affidavit.

THAT I, ERIC EARNEST, upon his oath and under the penalty of perjury pursuant to 28 U.S.C. § 1746, state and certify that the foregoing is true, correct and accurate to his best re-collection, belief, knowledge, and understanding.

Respectfully Submitted,

Eric Earnest-#03485-025
Greenville FCI, P.O. Box 4000
Greenville, Illinois 62246

THAT I, MR. PATTON, Case Manager, at the United States Federal Correctional Center at Greenville, Illinois, upon his oath and under the penalty of perjury pursuant to 28 U.S.C. § 1746, hereby state and certify that the above affixed signature of Eric Earnest was personally witnessed by me on this _15-th_ day of _July_, 2009.

Name_____ Title Case Mgr
Authorized by Act of July 7, 1995,
as amended, to administer oaths.
(18 USC 4004)

Mr. Patton, Case Manager

—3—

STATE OF ILLINOIS          )

                           )  SS.

COUNTY OF BOND             )


### AFFIDAVIT


That I, **ERIC ERNEST**, Reg. No. 03485-025, under the penalty of perjury pursuant to Title 28 U.S.C. § 1746, states and certify the following:


1.  That he is currently incarcerated at the United States Federal Correctional Center at P.O. Box 5000, Greenville, Illinois 62246, serving a term of imprisonment imposed by the United States District Court for the Eastern District of Missouri.


2.  That to the very best of my recollection, belief or knowledge, **DARWIN MARKEITH HUGGANS** (a/k/a "Mark"), was never a member or involved with **ANTHONY STILES** or the **SAIS DRUG OR-GANIZATION**.


3.  That I am of sound mind and health, and that the a-bove statement is true, correct and concise to the very best of my belief, knowledge and understanding.  Neither have I

been coerced or threatened by anyone resulting in this state-
ment.

Respectfully Submitted,

*Eric Earnest*

Affiant-Eric Ernest
Reg. No. 03485-025
P.O. Box 5000
Greenville, Illinois 62246

STATE OF ILLINOIS          )

                           )  SS.

COUNTY OF BOND             )

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS _____ 26 _____ DAY OF

_____ February _____ , 2009.

6/23/2010
MY COMMISSION EXPIRES:          NOTARY PUBLIC FOR ILLINOIS

"OFFICIAL SEAL"
JENNIFER HUSTON
Notary Public, State of Illinois
My commission expires 6/23/2010

*Eric Earnest*
Affiant-Eric Ernest

-2-

COUNTY OF McCREARY          )
STATE OF KENTUCKY           )

## AFFIDAVIT

Sammy Jefferson, having been sworn to tell the truth, states the following as his affidavit:

1.  My name is Sammy Jefferson.  At present I am an inmate of the United States Bureau of Prisons, confined at the United States Penitentiary-McCreary in or near Pine Knot, Kentucky.

2.  I am incarcerated pursuant to my plea of guilty to federal drug offenses arising from my involvement in a drug trafficking conspiracy. The conspiracy has been described as the Stiles conspiracy and as the Sais conspiracy.  My plea acknowledged my participation in the conspiracy during 2005 and 2006 until the end of the conspiracy in 2006.

3.  My residence during 2005 and 2006 was in St. Louis, Missouri.  I have pled guilty to involvement in drug transactions through the conspiracy in the St. Louis metropolitan area throughout that time.

4.  I knew Darwin Markeith Huggans prior to and during the time that I was involved in the Stiles/Sais conspiracy.  I also knew the individuals with whom I conducted drug transactions as a part of the

conspiracy.  None of my transactions ever involved Mr. Huggans.  I never saw Mr. Huggans take part in the purchase or sale of any controlled substance with any co-conspirator.  I never heard Mr. Huggans claim or admit to participation in any such transaction or in the conspiracy.

5.  Prior to learning of Mr. Stiles' statements implicating Mr. Huggans in the conspiracy, I never heard from Mr. Stiles or anyone else whom I knew or believed to be involved in the conspiracy that Mr. Huggans was a co-conspirator.  In particular, prior to learning of Mr. Stiles' recent statements to law enforcement agents and in court proceedings, I never heard Mr. Stiles say that Mr. Huggans was involved in drug transactions with him or was a member of the conspiracy.

6.  I believe that I would have known if Mr. Huggans was a participant during 2005 or 2006 in the Stiles/Sais drug trafficking conspiracy.  I had no such knowledge.

7.  If I had been called to testify by either the government or the defense at Mr. Huggans' trial, I would have testified and my testimony regarding the matters addressed in this affidavit would have been consistent with the statements in the affidavit.

Further affiant sayeth not.

_____
Sammy Jefferson

## ATTESTATION

Sammy Jefferson appeared before me on the ___7<u>th</u>___ day of

___May___, 2009, was sworn upon his oath, and subscribed to

this affidavit.

_____
Notary Public

My commission expires:

"Notary Public"
Noreen Phillips
State at Large, Kentucky
My Commission Expires on 12/8/2011

3

STATE OF KENTUCKY        )

                              ) SS.

COUNTY OF MCCREARY       )

## AFFIDAVIT

That I, **SAMMY JEFFERSON**, Reg. No. 29076-044, under the penalty of perjury pursuant to Title 28 U.S.C. § 1746, states and certify the following:

1.  That he is currently incarcerated at the United States Federal Correctional Center at P.O. Box 3000, Pine Knot, Kentucky 42635, serving a term of imprisonment imposed by the United States District Court for the Eastern District of Missouri.

2.  That to the very best of my recollection, belief or knowledge, **DARWIN MARKEITH HUGGANS** (a/k/a "Mark"), was never a member or involved with **ANTHONY STILES** or the **SAIS DRUG ORGANIZATION**.

3.  That I am of sound mind and health, and that the above statement is true, correct and concise to the very best

of my belief, knowledge and understanding.  Neither have I been coerced or threatened by anyone resulting in this statement.

                          Respectfully Submitted,

                          Affiant-Sammy Jefferson
                          Reg. No. 29076-044
                          P.O. Box 3000
                          Pine Knot, Kentucky 42635


STATE OF KENTUCKY          )

                           )  SS.

COUNTY OF MCCREARY         )


SUBSCRIBED AND SWORN TO BEFORE ME ON THIS _____3rd_____ DAY OF

____March_____, 2009.


MY COMMISSION EXPIRES: _____          NOTARY PUBLIC OF KENTUCKY _____


____J Ridol_____ Case Manager,        Affiant-Sammy Jefferson
Authorized by the Act of July 7, 1955, as
amended, to administer oath. (18 U.S.C. § 4004).

_____ 3/2/09
        (Signat.  )
United States   itentiary
    McCrea     KY                         -2-

## MEMORANDUM OF INTERVIEW

**Interviewed:**        Smith, Nikita
                DOB: 7/10/1952
                SS# 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

                Inmate Locator #: 34177-044

**Interviewer:**        Robert L. Thomure

**Date:**          August 29, 2008

**Location:**        FCI Terre Haute, Indiana
                4200 Bureau Road, North.

At the request of Attorney Nick Zotos, Private Investigator Robert L. Thomure interviewed inmate Nikita Smith. Prior to the interview arrangement had been made with FCI in Terre Haute. Mr. Smith was apprised of the identity of Investigator Thomure and how he was employed. Nikita Smith consented to being interview and the following is a synopsis of the interview.

Smith was arrested in 2007 as part of Drug Conspiracy and subsequently pled guilty to One Count in the Conspiracy and is currently serving his sentence at the FCI Camp in Terre Haute, Indiana.

Smith recalled when he was arrested and related that ANTHONY STYLES had already been arrested as part of the same Conspiracy. Prior to being arrested STYLES had contacted Smith and requested a meeting. During the meeting STYLES told Smith that he (Smith) needed to tell those folks (DEA) that he (Smith) had seen STYLES and MARK HUGGINS conducting business (drug transactions).

Smith stated he told STYLES that he was not going to lie on someone. STLES related to Smith, by telling DEA he witnessed the transactions they (Smith and STYLES) would be able to get their time cut. Smith again told STYLES he was not going to make up a story and lie.

Smith related that he thought the meeting took place at "HARD TIMES" located on Olive Street.

Smith stated he was arrested. After being arrested he was interviewed by Law Enforcement, recalling the name of one DEA Agent- Keaney. Smith was shown a photograph of Mark Huggins and asked what he knew about him?

Smith advised that he knew Huggins but did not know anything about him or his business.

It was related to Smith that Law Enforcement wanted his help and related that they wanted Huggins real bad. Smith related that again he told the Agents that he did not know anything. Smith was then asked if Huggins had told him what to say? Smith again advised that he did not know anything.

Smith thought that he had given a Proffer in September of 2007. He was shown numerous photographs and asked a lot of questions. One of the photographs was of Huggins and stated he knew him but had no information concerning him. He recalled he was asked a lot of questions about ANTHONY STYLES.

Prior to being sentenced Smith estimated that he had met with S/A Keaney about five (5) times. On each occasion he (Smith) was asked about Huggins).

Smith stated that the conviction he is currently serving is the only time he has been arrested.

# ETS COUNSELING & CONSULTING

ST. LOUIS MISSOURI 63108

## PSYCHOLOGICAL ASSESSMENT

**Patient:** Darwin M. Huggans

**DATE: May 13, 2009**

**IDENTIFYING INFORMATION:** Darwin M. Huggans is and African American male forty-two years of age. Mr. Huggans is currently confined to St. Louis County Jail awaiting sentencing in a drug arrest. Mr. Huggans reports he may receive life in prison.

Mr. Huggans is married and has four children. He reports his oldest child Robert is twenty-three years of age, and his youngest child Marquita seventeen is by his wife. And the other two children Jasmine twenty-two and Ashley twenty-one each have separate mothers.

**RELIABILITY OF INFORMATION:**
Considered Reliable

**REFERRAL SOURCE:**
Self

**PRESENTING PROBLEMS:**

Mr. Huggans reports he is depressed while waiting for his sentence hearing. Mr. Huggans reported being very anxious regarding his future, because of this arrest he feels the rest of his life may be spent in jail.

Mr. Huggans requested this evaluation because he is currently experiencing some dizzy spells and he is having periods of time where he blacks out and can't remember things that are happening to him.

Mr. Huggans reports he heard the term, "mitigating circumstances". Mr. Huggans related he is not sure what the term means, but believes he must attempt to investigate things regarding his life that were not approached in his court hearing.

Mr. Huggans reports a history regarding childhood trauma from his mother being abusive, and the divorce of his parents. Mr. Huggans reports he still suffers trauma from observing a person murdered at one of the high schools he attended.

## HISTORY OF PRESENTING PROBLEMS:

Mr. Huggans reports life was well prior to his arrest. He believes information regarding his conviction was fraudulently presented against him.

## HISTORY OF PREVIOUS PSYCHIATRIC

No psychiatric history however as a child received some counseling for anger issues. Counseling did not work because when he would verbalize his problems; his parents would get angry at him. From 2003 through 2008 he was in counseling with Adrianne England.

## FAMILY HISTORY (present):

Mr. Huggans believes his mother was Schizophrenic/Bi-Polar. He expressed how excessive she was with punitive action.

## FAMILY HISTORY (previous):

Mother and Brother are schizophrenic. My mother has heart problems and my father suffers from diabetes and hypertension.

## EDUCATIONAL HISTORY:

Mr. Huggans reports receiving his High School Diploma. He reports feeling illiterate because he doesn't comprehend what he reads sometimes. He reports when he needs information he usually pays someone to get answers. While in school my attendance and behavior was horrible. I did a lot of fighting and would miss many days. While at school I witnessed a murder, and the people I associated with displayed few boundaries.

**EMPLOYMENT HISTORY:**

Longest job I had was with the Fire Department. Most jobs I would get bored me and I quit.

**MILITARY HISTORY:**

None reported

**MEDICAL HISTORY: (CHRONIC PHYSICAL ILLNESS, ALLERGIES, NUTRITIONAL NEEDS IF INDICATED, NAME OF HEALTH CARE FACILITY, LAST PHYSICAL EXAM, ETC.)**

Mr. Huggans reports having dizzy spells and is blacking out with recent issues.

**BIRTH DEVELOPMENT HISTORY: (CHILDREN & ADOLESCENTS)**

None reported

**RECREATION AND VOCATIONAL INTEREST AND SKILLS:**

Mr. Huggans reports no current vocation plans. He reports not ever feeling smart enough to pursue skill training in other areas.

**ALCOHOL/DRUG HISTORY:**

Mr. Huggans a history of smoking cannabis and using cocaine and PCP one time. He reports no use in the last twenty years.

**EXISTING AND/OR POTENTIAL STRENGTHS AND ASSETS:**

Mr. Huggans is always resourceful in getting his needs met. He reports always finding a way to get help and maintain enough assets to pay for what he doesn't have.

**SYSTEM OF SUPPORT TO PATIENT IN HIS/HER NATURAL ENVIRONMENT:**

Mr. Huggans reports he has no one to depend on. He reports since his incarceration his wife only visits him on occasion and his son is the only one that will write and he visits.

## MENTAL STATUS:

Mr. Huggans is oriented to person, time, and place expressed some depressive thoughts but advised he was not suicidal or homicidal at this time.

### Stream of Thought and talk:

Mr. Huggans is cogent, very clear and concise in expressing his needs. Mr. Huggans can start and complete a sentence with content reaching a conclusion.

### Mood and Affect:

Mr. Huggans mood is stable, he was very relaxed during interview and capable of managing time allowed for meeting. He reports no suicidal or homicidal ideations.

### Memory (recent and remote):

Mr. Huggans reports some recent memory lost with black-outs this jail stay.

### Fund of Knowledge:

Mr. Huggans reports he is unhappy with his education. He reports never learning to read to a level of literacy. However he reports when there is a need to know he is resourceful enough to find information.

### Insight and Judgment:

Mr. Huggans reports his life has been good by standards of living, but his life has been a history of making bad decisions. Mr. Huggans reports his comprehension and assessment of major decisions will work well for a short period then move to negative outcomes.

### Summary of Testing:

Mr. Huggans was given an index of self esteem, Beck depression scale, drug use scale, and the Minnesota Multiphasic Personality Inventory.

On the index of self esteem no concerns noted. Mr. Huggans was well within the normal range. The Beck depression scale displayed minimal signs of depression.

The Minnesota Multiphasic personality Inventory (MMPI) produced a valid profile. The validity configuration suggests that this patient has significant psychological problems which the patient would like to discuss. Individuals obtaining similar results are often described as somewhat moody and opinionated, unstable and rebellious.

They tend to be overly critical of themselves and readily admit to psychological problems. It is likely that characteristic defense mechanisms are ineffective in dealing with current difficulties. This patient my feel vulnerable and defenseless.

Individuals who obtain similar profiles often display depression, restlessness and agitation to situational stress. This reaction is characteristic of a long-standing cyclic pattern of poor behavioral control which is followed by exaggerated feelings of guilt. This distress is often relieved after environmental manipulation or the beginning of another period of acting-out. The behavioral self-punitive tendency. Low frustration tolerance and a tendency toward addictive states may be present. While protestation of resolve to do better seems genuine, long range prognosis for behavior change is poor. Recurrence of acting out and subsequent exaggerated guilt are commons.

This patient is severely depressed, worrying, indecisive and pessimistic. Feeling of self-depreciation and inadequacy and pessimistic. Feelings of self depreciation and inadequacy are characteristic. Withdrawal, feelings of lack of worth which may have a delusional quality, apathy, lethargy and motor retardation may be present. Chemotherapy should be considered for depression.

This patient displays a long history of insecurity, immaturity and a well established prolivity to physical complaint are characteristic. An amazing capacity for repression and denial is often seen combined with fixed notions as to organic basis for physical complaints. Insight is virtually impossible.

Patients are often seen as orderly, self-critical and rigid. They tend to worry over minor problems and often evidence anxiety, tension, and indecision.

Similar patients evidence some inefficiency in living. Rationalization and intellectualization are common defense mechanism.

## RISK ASSESSMENT:

Mr. Huggans is oriented to person, place and time. He expressed no suicidal ideation or homicidal ideations. His current mood is stable and his affect is depressed. Mr. Huggans was recommended to seek medical assistance for his black outs and dizzy spells he is experiencing. It was further recommended that Mr. Huggans seek Psychiatric services to help with depression and anxiety he currently is experiencing.

## DIAGNOSTIC IMPRESSION:

| | |
|---|---|
| **Axis I:** | **Depressive Disorder NOS** |
| **Axis II:** | **Narcissistic Personality Disorder 301.81** |
| **Axis III:** | **None** |
| **Axis IV:** | **Severe    Legal/Home problems** |
| **Axis V:** | **70 past year/ 70 present year** |

**Signature:**  Erickson T. Smith PH.D.                **Date:** 5/13/09



Office: 314-302-0418
Fax: 636-294-4132
aeaglin@charter.net

2977 Highway K, Ste 157
O'Fallon, MO 63368

Darwin Huggans
P. O. Box 16060
Clayton, MO 63105

April 25, 2009

As a result of your request by phone for a brief letter referencing your previous counseling services, I am submitting this letter.

I am writing to advise that Darwin Huggans referred himself for counseling services in June of 2005.

Mr. Huggans initially presented due to a concern regarding anger management and relationships with his family and friends. As a result of counseling Mr. Huggans ahs appeared to improve his interaction with family members and friends. Mr. Huggans stated some years ago following therapy that after working through some control issues he understands why he became angry and now acknowledges his triggers.

Mr. Huggans has been seen on several different occasions with other family members to assist in restoring family relationships and for symptoms of depression. Mr. Huggans is extremely dedicated to his family and their well being. His inability to deal effectively with the changing dynamics of his family have resulted in his feeling a depressed mood, lethargic, insomnia, an increase in appetite, and a decrease in pleasure in usually pleasing activities. He contributes these feelings to being concerned about his family and his current life situations.

Despite his current legal issues it is important to note that Mr. Huggans has had a positive impact on family members. Mr. Huggans is extremely concerned about how they will manage in his absence and how his imprisonment will impact their functioning.

If you have any additional questions please contact my office by email or phone. The information is located in the letterhead.

Thank you,

Adrienne L. Eaglin, MSW, LCSW
Therapist

H

STATE OF TENNESSEE          )

                           )  SS.

COUNTY OF SHELBY           )



## AFFIDAVIT

I, RONALD GAVIN, Reg. No. 34171-044, under the penalty of perjury pursuant to Title 28 U.S.C. § 1746, states and certify the following:


1.   That he is currently incarcerated at the United States Federal Prison Camp at P.O. Box 2000, Millington, Tennessee 38083; serving a term of imprisonment imposed by the United States District Court for the Eastern District of Missouri.


2.   That on or about November 7, 2007, Assistant United States Attorney for the Eastern District of Missouri, Allison Behrens, TFO's John Christiansen and John Halliday, conducted a proffer with myself and my attorney.


3.   At the behest of the A.U.S.A., the agents and my attorney, I stated that the marijuana seized from my residence was purchased and received from Eric Brown known as "E.B."

And I also further stated at their behest that the cocaine seized from my residence was purchased and received from Darwin Markeith Huggans known as "Mark Huggans."

4.    The foregoing statements were fabricated and man-ufactured at the behest, coerion and threat of the A.U.S.A. and agents.   In fact, Mark Huggans and I have never engaged in any illegal activites, drug dealings or otherwise.

5.    That I am of sound mind and health, and that the above is true, correct and concise to the very best of my belief, knowledge and understanding.   Neither have I been approached, coerced or threatened by anyone resulting in this recantation.

Respectfully Submitted,

Affiant-Ronald Gavin #34171-044
P.O. Box 2000
Millington, Tennessee  38083

DATED at Millington, Tennessee on this _1st_ day of _February_, 2008.

-2-

STATE OF TENNESSEE           )

                             )   SS.

COUNTY OF SHELBY             )


SUBSCRIBED AND SWORN TO BEFORE ME ON THIS _1st_ DAY OF

_February_ , 2008.


_June 24, 2008_
MY COMMISSION EXPIRES:

_Gloria (Whitney) Howell_
NOTARY PUBLIC FOR TENNESSEE


_Ronald Gavin_
Affiant-Ronald Gavin #34171-044


–3–

<u>SWORN AFFIDAVIT</u>

THAT I, RICHARD Henderson a/k/a "Ricky," under the
penalty of perjury pursuant to Title 28 U.S.C. § 1746, states
and certify the following:


1.   That I am currently a resident of St. Louis, Missouri
for the past 90 days, and a citzen of the United States of
America by reason of birth.


2.   That on or about October 23, 2007, SAs agents, James
Stroop and Tiras Cunningham conducted an interview with myself
at the DEA St. Louis Division Office relative to my relation-
ship with Darwin Mark Huggans.


3.   That at the behest of the above named agents, Stroop
and Cunningham, I provided erroneous information knowingly
and intentionally concerning and targeting illegal drug
activities involving Darwin Mark Huggans and myself, in ex-
change for leniency/immunity for my own illegal drug activities
and bad acts.


4.   That the foregoing interview on October 23, 2007
and the statements made by me were under duress, thus they

were fabricated and manufactured at the behest, coerion, and threat of SAs agents Stroop and Cunningham. Although, I have personally known Darwin Mark Huggans for most of my childhood and adult life, he and I have truthfully never, ever engaged in any form of illegal activities, drugs or other-wise.

5. That I, Richard Henderson, is of sound mind and health, and that the foregoing is true, correct, and con-cise to the very best of my recollection, belief, knowledge, and understanding. Neither have I been approached, coerced, or threatened by anyone that would cause or influence my recantation. In other words, the undo pressures incurred by law enforcement can be tremendous and overwhelming, and can necessarily influence or evoke one to say what is not, just as easily as what is.

Respectfully Submitted,

Affiant-Richard Henderson a/k/a "Ricky"

DATED at St. Louis, Missouri on this Jun 18th day of June, 2008.

-2-

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS _____

DAY OF _____, 2008.

"NOTARY SEAL"
Deborah R. No___ ___ Notary Public
St. Louis City ___ ___ Missouri
My Commission ___ ___ 2/8/2009
Commission Number 05476942

MY COMMISSION EXPIRES:                NOTARY PUBLIC FOR MISSOURI

"NOTARY SEAL"
Deborah R. Norman , Notary Public
St. Louis City, State of Missouri
My Commission Expires 2/8/2009
Commission Number 05476942



–3–

STATE OF MISSOURI          )

                           )  SS.

CITY OF ST. LOUIS          )


## AFFIDAVIT


THAT I, ROBERT KIBBY, upon my solemn oath and under the penalty of perjury pursuant to Title 28 U.S.C. § 1746, state and certify the following:


1.    That my name is Robert Kibby, and I am a resident of the City of St. Louis, State of Missouri.


2.    That during the spring/summer of 2008, via telephone, Anthony Stiles and myself had a conversation pertaining to his statements made to Drug Enforcement authorities implicating DARWIN MARKIETH HUGGANS in a drug conspiracy.  Moreover, Anthony Stiles' personally told me in the above telephone con- versation that he would lie and do anything within his humanly powers to receive a substantial reduction in sentence in order to get back home to his children and wife.  He further told that he was prepared to lie on DARWIN MARKEITH HUGGANS and

any one else of material interest to drug enforcement author-
ities to solitify his substantial assistance reduction.


3.  That if I had been called to testify by either the
government or the defense at Mr. Huggans' trial, I would have
testified and my testimony regarding the matters addressed in
this affidavit would have been consistent with the statement
made in the affidavit.


That I, Robert Kibby, state and certify that the fore-
going is true, correct and accurate to his best recollection,
belief, knowledge and understanding.


Respectfully Submitted,


/s/ _Robert Kibby_____
Affiant-Robert Kibby


DATED at St. Louis, Missouri on this 22 day of August , 2009.


-2-

STATE OF MISSOURI      )

                               )  SS.

CITY OF ST. LOUIS      )


SUBSCRIBED AND SWORN TO BEFORE ME ON THIS 25th DAY OF Aug,

2009.

DEBORAH R. NORMAN
Notary Public-Notary Seal
State of Missouri, Saint Louis City
Commission # 09476942
My Commission Expires Mar 18, 2013

DEBORAH R. NORMAN
Notary Public-Notary Seal
State of Missouri, Saint Louis City
Commission # 09476942
My Commission Expires Mar 18, 2013

MY COMMISSION EXPIRES:           NOTARY PUBLIC FOR STATE OF MISSOURI


/s/ 
Affiant-Robert Kibby


–3–